Thank you, Your Honors. My name is Robert Thurston, and I'm here on behalf of the appellants who are the petitioners, and I'll refer to them as petitioners. I'd like to reserve four minutes for rebuttal, if I may. And I'll just very quickly also, Your Honors, point out the fact that neither of my clients were able to be here today. J. M. is a minor student who is attending school at the Maui Autism Center, so he's there on stay put, and he's at school. The mother, Maria, who's also the other appellant, just got out of the hospital, so I apologize for their not being here today. We have a lot to cover, and there's two main things I'd like to focus on in this court. One is the burden of proof issue, and the other is the district court and the hearing officer's decisions on free appropriate public education. And I'll start with the burden of proof, Your Honors, if I may. This is a critical issue, Your Honors, because as the general rule goes in IDEA cases, under Schaefer v. Wiest, the party who was seeking the relief is the party who bears the burden of proof. Now, the problem that we are seeing, it's actually a systemic problem here in the District of Hawaii, is that there is an assumption or presumption that that burden is always on the parents. More often than not, the parents are the ones filing a due process complaint under the administrative hearings. And so therefore, there's an automatic assumption that they bear the burden of proof. However, Schaefer v. Wiest says there are exceptions, and the burden of proof is actually kind of a amorphous kind of issue in that it's very highly dependent on the facts. Did you raise this issue below? It was not raised in the district court, Your Honor. And thank you for asking that question, because we believe it's fundamental error that it was not, that this court can look at that issue, because it's fundamental error. And we think it's fundamental error for three reasons. Did you even raise it before the AHO? No, it was not raised in the AHO. However, it still can be addressed by this court for a couple of reasons. First of all, there was no analysis of the burden of proof. It was, like I said, it was just an assumption. The parents bear the burden of proof. That assumption... It's a ruling by the administrative hearing officer, right? It was a one-sentence statement that, yes. But a ruling. And did you object to the ruling? It was not objected to at the district court. That's correct, Your Honor. Oh, and before the hearing officer? Before the hearing officer, I do not believe it was objected to. Isn't that a failure to exhaust administrative remedies? No, the exhaustion of administrative remedies is done whence the hearing officer issues their decision. In other words, you're not at the stage where it's appealable yet. We're not at the U.S. Supreme Court. No, that's correct. However, this court has found exceptions to the burden of proof. In fact, in the most recent case of MC v. Antelope Valley Regional High School District, this court found exception to Schaefer v. Wiest. And that issue was also not raised in the lower... I'm not sure you fully took Judge Teshima's point. Part of exhaustion of administrative remedies is that you need to make the argument in front of the administrative agency and it sounds as though the argument wasn't made. That's correct. However, the Ninth Circuit has a doctrine of fundamental error. Actually, all the federal courts do. And we believe it's fundamental error for, if I may, these reasons. First of all, the first issue was that the parents weren't even really the party seeking relief. In the facts of this case, the parents had already won private reimbursement for the private placement. Yeah, but then the defendants proposed a new IEP. That's correct. To which the parents objected. That's correct. And the administrative hearing officer, AHO, I guess in this case, said the IEP is sufficient. That's correct, Your Honor. So this is a case in which your clients were objecting to an IEP proposed by the state. That's correct, Your Honor. So I don't understand why, under those circumstances, you think the state has the burden of proof. That's a great question because that brings in the other reason of fundamental error and that is, Your Honor, the state had a remedy and that remedy was to appeal the first hearing officer's decision. Wait a minute now. That was only for a time certain, right? This new IEP is for a different time period, isn't it? That's correct, Your Honor. There's no continuation of that same IEP for 5, 6, 7, 8 years, right? Well, there is, Your Honor. So this is a new IEP, right? Well, under state put, there is, Your Honor. Under state put, there is continuation. We're not talking about state put here, are we? Okay, but the problem is... Are we talking about state put here? We are not talking about state put. All right, then this is a new IEP, right? Right, that's correct, Your Honor. Who has a burden on that? You're challenging the IEP. Right, and what I'm saying, Your Honor, is that because the state is the one seeking relief, because by the change in placement... They're seeking relief. They're changing placement. No, but because it's a different period, right? Well... It's a new IEP and they're entitled, you know, to do that and, you know, you add your input into the IEP. Except it's, well, no, that's also an issue, though, Your Honor, whether or not the parents had adequate input into that IEP. But the issue is this, Your Honor. That IEP came out 30 days after, less than 30 days after the AHO's decision. And the problem with that, Your Honor, is that was still within the period of time that if the state felt aggrieved by the private placement, they could have filed a... But the IEP didn't apply to that earlier period, right? It applied to a new period. Well, the IEP was changing placement that had just been awarded by the AHO. Well, but it was like a retroactive, in a sense, a retroactive award. Well, but what it is, really, the new IEP is actually an appeal of that. It's effectively an appeal. No, it's not. And that's my problem with your argument. The state, you prevail with respect to the first IEP. Yes. The state, in a commendable action, says, well, perhaps you're right. Perhaps the IEP isn't sufficient. Rather than tie you up in appeals and we'll go out and put together a new IEP. And that new IEP may be insufficient. I want to hear what your arguments are about that. But surely the state shouldn't be penalized for failing to appeal the first IEP. Why? They reacted to the AHO's order. The AHO said this IEP is deficient in some ways. And they attempted to remedy it by coming up with a new IEP. You think that second IEP is insufficient. So it seems to me you're attacking the new IEP and should have the burden of proof. Well, okay. To some extent, I would agree with you, Your Honor. However, let's look at the situation of placement under IDEA. When a placement is awarded, there's several factors that go into that. One factor is that the public school hasn't provided FAPE. The second factor is that private school has provided FAPE. And is continuing to provide FAPE. So it's fundamentally wrong to allow the state to go ahead and effectively change that decision. Because, by the way, and addressing Judge Tashima's issue, is that it is sort of for the same time period. Because the decision by the AHO came out in October. That IEP came out in November. Now that IEP was for that same school year, beginning in November. So effectively, so in other words, what was happening was, the AHO said in October that placement at the Maui Autism Center was appropriate. And now the school, during that same school year, is saying, well, no, it's not appropriate. We've got to bring them back to the public school. To be fair, and I want to give you time to address the substance of this case. They didn't say placement at the Autism Center was not appropriate. What they said was that they could provide a FAPE in the public school. That's quite a different... Well, and that's exactly why they should have the burden of proof, Your Honor. So turn to, because I think you've maybe exhausted that argument. Although you didn't exhaust it. Perhaps you can tell us what was wrong with the FAPE, with the IEP that was proposed. And before you do, I want to make sure I understand that your only objection to the IEP is with respect to the anti-bullying measures, correct? Well, that's the primary issue, yes. It's the only one in your briefs. Am I right in thinking it's the only one in your briefs? Yes, yes. Now, and I appreciate that, Your Honor. It was ineffective because the U.S. Department of Education had come out with several guidances years before this. And the U.S. Department of Education, which is, their guidance letters are to carry great weight in both in the development of IEPs and in school districts, as well as in the courts. And what those both mapped out was a very long history of analysis of looking at bullying and how it applies to children with disabilities. And the idea there is that they said that there are roughly eight points that should be made in order to address bullying in an IEP. And so the new IEP that was proposed in November of 2014, it really only addressed four of those issues. And one is almost innocuous because... So I want to understand, is your position that as a matter of law, you must address all eight in the Dear Colleagues letter? Yes. Tell me what case you rely on for the Dear Colleagues letter having binding legal effect. Well, Your Honor, it doesn't have binding effect. I will say that. But what it is, is the Supreme Court has said such letters are agency analysis or interpretations of the regulations and the laws. And they are to be given great deference by courts, and in particular in this case... I'm having trouble finding the great deference language in the Supreme Court decisions. Can you direct me to a Supreme Court decision that says these kinds of guidance letters get great deference? It is in my brief, Your Honor. I apologize. I'll look at it. I don't have the page. But that is in my briefs. Can we get down to brass tacks? Because what precisely should be in the IAP that's not there? That's right. Okay. Thank you, Your Honor. So, first of all, one that's clearly not there is the development and implement of clear policies to address bullying, okay? Now, on the record, the state admit they don't have an anti-bullying policy. That school didn't? The school district didn't? The DOE really doesn't have a policy on anti-bullying. But isn't policy something beyond an individual IEP? In other words, you know, it's a school-wide issue. Well, that's correct. So the question is, you know, it should be addressed not in an IEP, should it? Well, yes, it should. Because, actually, you know, if you look at it, a policy is addressing all students, but in particular, it should be addressing in an IEP because it's addressing that particular student. And in particular, because this student had a history of being bullied and had a disability, and as the amicus curiae brief pointed out, that children with disabilities are highly susceptible to bullying, it should have been in that IEP. So that's one issue. There's no policy from the state. Another issue that was completely missing was a way to monitor and track the bullying behaviors. There was nothing in the IEP that suggested that. Bullying behaviors more generally or only with respect to this child? Well, with respect to this child. In general, in general. Can I interrupt? Why is that so? That is to say, under the IEP that we have that you're now challenging, there's one-to-one supervision. That is to say there will always be an adult with the child capable of observing any bullying episodes and therefore capable of understanding what they were and keeping track. So you're saying there's no mechanism by which we can keep track of these things. Well, you've got an adult there at all times. What are you saying then? I'm glad you said that, Your Honor, because that one-to-one aid was in the prior IEP that was found insufficient. That IEP, that prior IEP had a one-to-one aid, and yet while that child had a one-to-one aid, while JM had a one-to-one aid, he was kicked and bullied and punched. No, but your argument is, the one you're making right now, is there's no way of keeping track. Yes, that's right. Well, I don't understand what you're saying then. Because you're saying with respect to the prior IEP, the adult being there wasn't enough to prevent the bullying. Right. But that's not the point you're making. You're making the point of you can't keep track of what happened. That's true. Okay, so let me address that, Your Honor. The point is that a lot of systems with IEP are all about tracking and collecting data about this child, about what happens to this child at school. So just having a one-to-one aid doesn't necessarily track what's going on. And I will raise another issue that's also brought up in the amicus curiae, which is children with autism in particular, but a lot of children with disabilities, have a difficulty of self-advocating for themselves. So the idea is that you can't put the burden on the child to sit there and say, I was bullied today or this happened to me today. You have to put the burden on the school to do that, to track that information. There's nothing in the IEP that explains how we're going to track these bullying incidents. Okay. Another is to address ongoing concerns. And that means, okay, something has come up. Maybe there is a report or some data that this child has been bullied. And the problem is there's nothing in the IEP that says this is what we're going to do. Are we going to have anti-bullying seminars? Are we going to give some training for these students and for the teachers and the faculty, for that matter? There's nothing in the IEP that discusses that. And perhaps the most important is the prevention of bullying. There's nothing in the IEP that says, how are we going to prevent this kid who's been bullied in the past from being bullied again by the school? So I see my time is up, and I'll leave the rest for rebuttal. Okay. Well, we will give you time for rebuttal, but in fact you used all your time. But I understand you wanted to save time for rebuttal. We will give you time for rebuttal. Okay. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. Ewan Rayner on behalf of Katherine Matayoshi on the State of Hawaii Department of Education. In November 2014, when the IEP that is at issue in this case was developed, the State of Hawaii Department of Education was obligated under the IDEA to create a new IEP, because the IEP that was formally in effect had been rejected in the prior administrative hearing because it did not do enough to address the concerns raised by the fact that students had been bullied. Would you have been required to come up with a new IEP if you simply wanted to leave this student in the Autism Center? I believe so, yes, because under the IDEA, every disabled child must have an IEP drafted and put into effect by the local educational authority. And that's in IDEA Section 1414D. So even if you were going to place the child in the private facility, you'd need an IEP? That's right. Before you go on here, am I right in thinking that under the State Port Order, currently in effect, the State pays for the education in the private facility? That's correct. And those payments are not at issue, correct? No. In other words, you're not seeking to recoup them from the other side? No, no. The State is obligated to pay under the State Port Provision until the appeals are exhausted. So just to be clear, even if you prevail on this appeal, the State compensates the period up until the repeal is resolved? Right. Okay. This time, when the Department of Education created the November 2014 IEP, it did everything it was supposed to do. The IEP team members were informed that Jayhem had been the victim of bullying at the home school, and they considered that incident and the prior bullying, and as a result, the November 2014 IEP included numerous services that were specifically aimed at, A, preventing bullying from occurring, and B, in the event that any incident should occur, minimizing its effect. This record is a little different than most that we see in IDEA cases because the AHO found the previous IEP insufficient, and then a new IEP was proposed and the same AHO found it to be sufficient. What are the differences between the two IEPs? We have a child who was subjected to very bad behavior. An administrative hearing officer said your IEP doesn't protect him against that behavior. Right. And then you have a new IEP. Tell me why the second IEP is better than the first one and why it protects. Well, firstly, I'd point out that the original IEP is not actually in the record. So we're relying on the But we do have a long decision by the administrative hearing officer describing it. That was my point. That's what we're relying on when we talk about the prior IEP. But based on that, there are a lot of differences. First of all, there's a full-time one-to-one aid in the new IEP. There was a one-to-one aid in the prior one. It's not entirely clear whether in the prior IEP it was supposed to be full-time. But what is clear from the prior administrative hearing officer's decision is that whatever the IEP required, the student was not supervised during lunch and recesses. Now, in the current IEP, the November 2014 IEP, the crisis plan that's included in the IEP affirms that the student will be supervised at all times. And the testimony before the administrative hearing officer also clarified that the one-to-one aid would also be present in lunches and recesses. And the hearing officer specifically found that the student would never be left alone. And in addition... And I gather that the bullying that had previously taken place had taken place outside the classroom, on the playground. Yes, during recess and lunch. And the other thing in response to that is that the new IEP actually specifically addresses lunch and recesses. It creates a plan whereby the JM would have modified lunches and recesses. And as the administrative hearing officer found, based on the testimony of the DOE special education teacher, what that means is that initially JM would be able to take lunches and recesses in a classroom with just him and either a teacher or the one-to-one aid. And gradually, if JM was comfortable with it, additional students would be able to be added to that classroom. The other things that were added to the IEP that made it different to the original one, it included, in addition to the modified lunch and recess, it included role-playing of situations that could cause JM anxiety. It included a social stories program, which was another program aimed at aiding with his anxieties. And most importantly, though, it included the crisis plan. And the crisis plan, its sole purpose, the specific purpose stated in that was to assure JM's health and safety in the event that any actual or perceived bullying incident should occur. And Mr. Thurston's objection, as I gather, is not what's in the plan, but what's not in the plan. Specifically, his argument is that even though the DOE guidelines, the Dear Colleagues letter, is not mandatory, apparently all eight points should have been followed in the IEP in this case, but weren't. What's your response to that? Well, just assuming for a second, without conceding, that those things are mandatory. Right, right. I'm not asking you to concede that. Right. Well, many of the things that a present counsel says are not in the IEP actually are in the IEP. And, for example, the one point that a present counsel discussed was there's no method to track bullying behaviors in relation to JM, which actually the crisis plan specifically includes that. It states that following any actual or perceived bullying incident, details will be documented in the student's counseling file. And in addition to that, the IEP includes a daily log with the parents, and the crisis plan confirms that the parents would be – a report would be sent to the parents should any incident occur. Is there anything in the IEP to discourage bullying as opposed to protect this individual student against it? I assume you're talking about on a school-wide basis. A school-wide plan or some sort of – There's nothing in the IEP. Some sort of, you know, counseling to students, counseling to the bullies about the inappropriate – There's nothing like that specifically in the IEP, but there was a lot of testimony before the administrative hearing officer about the school-wide policies. And in fact, even though opposing counsel points out that there was testimony that there was no official anti-bullying policy, based on the hearings officer's findings and the testimony, there's clearly a de facto anti-bullying policy, and that included things like counseling. It included the testimony from the principal that the school follows the Chapter 19 disciplinary procedures. And Chapter 19 actually specifically defines bullying and specifically prohibits bullying. The school also implements an anti-bullying buddy system. It has counseling sessions regarding bullying. It has public speakers on bullying. And during anti-bullying week, it has participated in various activities which were specifically described by the principal in front of the hearing officer. So I'm not entirely certain exactly what it is in the dear colleague letters that was supposed to be included here, which was not included. How old is this student now? It was 14, I take it, at the time? A little younger than that. I think 11 at the time. Okay, so this student's not at the end of – near the end of his IDEA eligibility. Getting there, right. Well, you're always getting there. Right. He's not – as I understand it, it's either the finishing of high school or age 21? I believe it's the – yes, yes. And he's not – neither of those events are imminent? Right. Okay. I think he's 14 at the time. I can be corrected. Yeah, so I thought it was 14 at the time, and we're now in 2018. 14 now, I mean, yeah. But he's 14 now. Okay. Yeah, right, right. I'd just like to briefly address the burden of proof issue that opposing counsel raised. Well, I think the arguments against it I think are made in our brief, and I think the U.S. Supreme Court Schaffer decision is very clear, and this court's Van Doyen decision is very clear, that it is the party seeking relief and challenging an IEP that bears the burden of proof. But the one point I would like to make about it is that contrary to opposing counsel's arguments, this is not a case where the Department of Education was attempting to circumnavigate the procedural requirements of the IDEA by unilaterally changing the placement of the student. Because when the prior administrative hearing officer rejected the prior IEP, the school was obligated to create a new IEP, and it did that. And J.M. and his mother had the right to challenge that IEP, and they did that. But under Schaffer and Van Doyen, as the party challenging that IEP, they bore the burden of proof. I guess if we look at this case from 30,000 feet, the difficulty in the case seems to be that the record is quite clear that the student was bullied rather severely, and that the previous IEP was insufficient to address it. How does that inform our review of the 2014 IEP? In other words, on the surface, it may look like a fine IEP, but we know the history that lies behind it and the school's previous inability to protect the students against bullying. Right, and I think that came out during the testimony that the administrative hearing officer took. Both the Department of Education psychologist and the Department of Education special education teacher, both of whom were members of the IEP team for the home school, they both testified that the crisis plan and the other measures in the IEP that were put in to address bullying were put in there. And the DOE psychologist specifically testified that those things were put in because she had been informed that the student had previously been bullied at the home school. And the special education teacher and the Department of Education psychologist both also testified that they had reviewed the prior hearing officer's decision prior to the IEP meeting. In addition, the special education teacher also testified that the measures in the IEP and the crisis plan were discussed at the IEP meeting specifically to address the bullying incidents identified in the 2014 administrative hearing officer decision. That's the prior decision. Let me ask you this. Because of the severity of the prior bullying, and as far as I can tell from the record, the really pretty disgraceful indifference, even denial by the school authorities the first time around, I mean, they just pretended it didn't happen, didn't do anything about it, and the trauma inflicted. We have the testimony from the mother that the boy, when taken back, says, I'm not going back to that place ever. That's different, and I'm following up on Judge Hurwitz's question, that's different from somebody coming into a school for the first time. I mean, this has been a place of traumatic experience. Is it possible even to have an appropriate placement in this child, in this place where he has suffered so severely and so traumatically the first time around? Yes, I think it is, and I think it is with the... And you think it is because? Because of all the additional measures that were put into the IEP, and including the crisis. But this is a psychological question as to which I don't think either you or I is fully capable of giving an answer. We do know that severe trauma in certain places, the trauma can be triggered by putting the person back in the same physical place. And this is obviously what the kid was saying the first time around quite a while ago. And you say you don't think so. Okay, you don't think so, but I've got trouble with an IEP that says, you're going back to the same school where we had all these problems. Right, and it's a great question, and I fully understand the concern. And I think the Department of Education is in a fairly difficult situation. They're under an obligation to create a new IEP. And the IDEA favors placement in the public school system. It favors placement in the school that the student will be educated in if the student were not disabled. And I think what the Department of Education has done here, they tried to craft an IEP which, as best as possible, balances those concerns. It balances the need for JM to have opportunities to interact with the same age and undisabled peers while at the same time protecting him from the possibility of any further bullying occurred. And that was specifically one of the concerns about students' placement at the private school. Let me ask you this. It may be in the record, but I didn't quite pick it up as I was reading all the materials. Tell me about the homeschool. How old are the kids in the school? The students in the homeschool, I believe, were all younger than JM. Let me ask you this. Grades went through what in the school? I don't know specifically, and I don't think that is actually in the record. The reason I'm asking is the bullying that occurred when the kid was beat up so badly, he was in the first and second grade, and it was, I think, fifth graders who were doing it. And so I'm wondering whether or not those same children are still in the school. Well, that's certainly not in the record. So I didn't see it, which is why I thought I'd ask to see it. It's not in the record. I think it's an argument that opposing counsel attempted to make, but it's certainly not in the record. And, in fact, now, of course, students would not be going back to the same school. Even during the school year that this IEP was created for, partway through that year, the student would be going to a different school, an intermediate school. Okay, that is the question I'm asking. So it's like a one through six, and then there's a middle school, and then there's a high school? Right, right. That was my question. Okay, yeah. I see my time is up. I don't have any further points. So if there's no further questions, I will conclude. Okay, thank you. Thank you. Now you had sought to reserve four minutes. I did not. Maybe I'll take a little bit on myself. The clock counts down, and it goes from 15 to zero. Next time you're here, realize how that works. Let's put four minutes on the clock. These are four free minutes. Thank you, Your Honor, and I'll try to be respectful and not even take the four minutes. But I just want to address a couple issues from questions that came from the panel. And most importantly, and a couple of the questions were related to how does this new IEP address some of these issues. And I think that's a great point because, you know, what gets lost a lot of times in these IDA cases, and frankly with schools, is what the I in IEP stands for. It means individualized. And that means that every service that's in there, and also kind of addressing what Judge Tashima brought up, which is that that's the whole purpose of policy, school-wide policies, is that they are to be enforced for all the children, but in particular in an IEP, you need to address these issues. The bullying issue wasn't very well addressed in the new IEP. And frankly, this was also addressed in our brief, is that the parent really didn't even get to address the bullying to the extent she wanted to at the IEP meeting. That was one of our issues that we've brought up at all levels of this proceeding. And why is that important? Well, it's important because the bullying was the central part of what was the concern in the change of placement, going back from a very safe placement, which was the Maui Autism Center, back to the public school system where he was bullied. Now, you're right, the record is not clear on whether the students who had bullied him in the past were going to be at the school where he would return to. However, that's not the issue because there may be a different set of bullies that are there, different kids that are going to participate in that kind of activity. So the issue is how is this IEP going to address that? I don't think it ever really accurately or very well did. And that's evident by the fact that they didn't meet all the U.S. Department of Education recommendations. Let me ask you about the mother's ability to put input into this. The hearing officer makes some findings, and I'm looking at pages 9 and 10 of the hearing officer's findings, that say the school sent the mother a letter to schedule a conference. They mailed certified letters to her address. They went to the address. There was a no trespassing sign. They tried to time it again to get her to come and talk to them, and they couldn't get her to come in. There was a telephone call once with her and her attorney. Under those circumstances, how can you argue that the school didn't attempt to allow her to provide input into it? Well, that's correct, Your Honor, and I will agree that there is an exception in IDEA, that an IEP team can proceed without the parent if they've made reasonable efforts. However, we have to look at the history here, Your Honor, and that is the mother was horribly upset, as Justice Wallace observed, the trauma that had happened to her child, and so she was very hesitant to participate. But she actually did come to an IEP meeting, and the issue of bullying was kind of shut down. This also addresses the issue of whether or not the school was really truly sensitive to the bullying issue, because they really kind of shut the mother down in that discussion. Where's that? See, I'm looking at that. You think the hearing officer's findings on this are not supported by the record that was in front of him, or just that there is contrary evidence from which a different conclusion could be reached? There's contrary evidence in the record, yes, Your Honor. I also wanted to ask you about adoption of programs at the school. The hearing officer finds the school has adopted two anti-bullying programs, and they have titles. Were those in effect before, or were they adopted in response to the first IEP? I don't believe the record is clear on that, Your Honor. So, to be honest, I can't answer your question. One of your concerns was that there wasn't a general anti-bullying policy, and the hearing officer finds that there were anti-bullying programs. I don't know if that's a policy or not. Does the record make that clear? No. There was a discussion of a buddy program, but we don't really – the record is not real clear on what the details of that are, Your Honor. Okay, thank you very much for your time. Thank you. Thank both sides for your helpful arguments. In the case of JM v. Matayoshi and State of Hawaii Department of Education,
judges: Tashima, W. Fletcher, Hurwitz